[L. A. No. 577.    Department One.—October 13, 1899.]

T. J. HIGGINS et al., Plaintiffs, v. CITY OF SAN DIEGO, Defendant and Respondent.    SAN DIEGO WATER COMPANY, Cross-complainant and Appellant.

Change of Place of Trial—Action against City—Disqualification of Judge—Pecuniary Interest as Taxpayer.—A change of the place of trial of an action against a city not directly involving the levy of a tax, but to collect a money demand, the judgment for which is contingent upon the fact that there were funds in the treasury applicable to its payment when the claim accrued, cannot be demanded on the ground that the judge is disqualified by reason of his pecuniary interest in the result of the action as a resident property owner and taxpayer within the city.

Id.—Contingent and Remote Interest not Disqualifying.—An interest in the result of a litigation, to disqualify a judge, must be a certain, definable. pecuniary or proprietary interest or relation, which is direct and proximate, and not contingent or remote; and a mere contingent and remote possibility that some future supposable financial condition of a municipality might, in a slight degree, affect the judge as a taxpayer, is not a disqualifying interest of the judge in the result of an action against the municipality for the collection of a money demand.

Id.—Bias and Prejudice of Judge—Interest a Distinct Ground.—The interest of a judge in the result of the litigation is a distinct ground of disqualification, and cannot be considered upon an inquiry as to bias and prejudice on his part.

Id.—Controversy Affecting Judges as Consumers of Water.—The fact that a long-continued controversy between a water company, cross-complainant, and a city, defendant to the cross-complaint, had engendered much feeling between the water company and its consumers, including the judges about to try the issues raised upon the cross-complaint. does not indicate bias and prejudice sufficient to disqualify the judges from trying the issues thus raised.

Id.—Former Personal Controversy with Water Company.—The existence of a former personal controversy between a judge and the water company, which took place before he became superior judge, and which was not of such a nature as to indicate that he carried an old grudge, if he had any, against the water company, with him upon the bench, and the charges in regard to which were largely hearsay, and stated upon information and belief, does not justify a conclusion of disqualification of the judge to try an issue to which the water company was a party.

ID.—FORMER CONTROVERSY BETWEEN JUDGES AND ATTORNEYS—PREVIOUS CHARGE OF DISQUALIFICATION.—A former controversy between the judges and the attorneys of the water company, growing out of a previous affidavit of bias and prejudice, in respect of which the attorneys were censured by the judges, who stated that, unless it was presented through inadvertence, its presentation would be a contempt of court, does not indicate that the judges would be disposed to bear down upon the water company, or to favor the city, in a controversy between them.

ID.—AFFIDAVITS UPON INFORMATION AND BELIEF.—Affidavits based upon information and belief are of weak probative force, as ground for a change of the place of trial, especially where the sources of the information are readily obtainable, but are not brought forward.

ID.—EXAMINATION OF AFFIANT BY JUDGES AS TO HEARSAY STATEMENTS—WAIVER OF OBJECTION.—Where no objection was taken to the examination by the judges of an affiant as to hearsay statements contained in his affidavit respecting their feelings toward the water company, upon a motion for the change of judges, or of the place of trial, and the motion was submitted upon the evidence as it went in, such examination cannot be objected to upon appeal.

ID.—INSUFFICIENT AFFIDAVIT—CONCLUSION OF PERSONAL ANIMOSITY.—An affidavit stating certain facts upon information and belief in regard to an offense taken by a judge about to try an issue to which the water company was a party, because of a brief filed by its attorneys in the supreme court in another action, and a complaint made by the judge to that court; and in regard to the judge being championed and defended by a newspaper adverse to the water company and its attorneys, and the existence of a strong feeling of friendship between him and its opponents, does not warrant a concluding statement "that said judge entertained feelings of personal animosity toward the company, its managers, and officers." That conclusion cannot be received as a fact, because so stated in the affidavit, it not being warranted by the facts set forth.

ID.—STRAINED PERSONAL RELATIONS BETWEEN JUDGE AND ATTORNEYS.—Strained personal relations between a judge and the attorneys of a party, though placing them at some disadvantage, do not legally disqualify the judge from hearing the controversy between the parties to the action.

APPEAL from an order of the Superior Court of San Diego County, denying a motion for a change of judges or a change of the place of trial of an action.   J. W. Hughes and E. S. Torrance, Judges.

The facts are stated in the opinion.

Works & Works, for Appellant.

The judges were disqualified by reason of their pecuniary interest as taxpayers. (Code Civ. Proc., sec. 170; *Meyer v. San Diego*, 121 Cal. 102; 66 Am. St. Rep. 22; *North Bloomfield etc. Co. v. Keyser*, 58 Cal. 315, 322; *Pearce v. Atwood*, 13 Mass. 324, 340; *Peck v. Freeholders of Essex*, 21 N. J. L. 656; *Austin v. Nalle*, 85 Tex. 520; *Wetzel v. State*, 5 Tex. Civ. App. 17; *Stockwell v. Township Board*, 22 Mich. 341.) They were disqualified by reason of bias and prejudice. The court could only look to the affidavit and counter-affidavits for the facts. (Code Civ. Proc., sec. 170, subd. 4.)

H. E. Doolittle, City Attorney, and T. L. Lewis, Deputy City Attorney, for Respondent.

The judges were not disqualified in this case as being resident property owners and taxpayers. (*Oakland v. Oakland Water Front Co.*, 118 Cal. 249; *Meyer v. San Diego*, 121 Cal. 102; 66 Am. St. Rep. 22; *Foreman v. Marianna*, 43 Ark. 324; *State v. Stuart*, 23 Me. 111; *State v. Craig*, 80 Me. 85; *Northampton v. Smith*, 11 Met. 390; *Commissioners of Clermont County v. Lytle*, 3 Ohio, 290; *People v. Edmonds*, 15 Barb. 529; *Bloodgood v. Overseers etc. of Jamaica*, 12 Johns. 285; *Minneapolis v. Wilkin*, 30 Minn. 140; *Dallas v. Peacock*, 89 Tex. 58; *Wade v. Travis Co.*, 72 Fed. Rep. 985; *Thornburgh v. Tyler*, 16 Tex. Civ. App. 439.) The judges were not disqualified by reason of bias and prejudice. Prejudice can only relate to the case before the court. (19 Am. & Eng. Ency. of Law, 4; *Wallace v. Jameson*, 179 Pa. St. 98.) A feeling of aversion between the judge of the court and counsel for the water company does not disqualify the judge. (*Hutchinson v. State*, 19 Neb. 262; *Pierson v. State*, 18 Tex. App. 524.) Affidavits upon information and belief cannot justify a change of the place of trial. (*People v. Shuler*, 28 Cal. 495; *People v. McCauley*, 1 Cal. 383; *People v. Majors*, 65 Cal. 147; 52 Am. Rep. 295; *People v. Congleton*, 44 Cal. 95; *People v. Vincent*, 95 Cal. 427; *People v. Elliott*, 80 Cal. 298; *People v. Mahoney*, 18 Cal. 186; *Bachman v. Cathry*, 113 Cal. 501.)

CHIPMAN, C.—Plaintiffs bring the action for themselves and all other taxpayers of the city of San Diego. Certain de-

fendants answered the complaint and the defendant, the water company, filed a cross-complaint. Upon the filing of the answer the plaintiffs dismissed their action, "leaving the contest to be waged between the water company on one side and the city and its officers on the other." The issues are fully stated in the opinion of the chief justice on the first appeal (*Higgins v. San Diego Water Co.*, 118 Cal. 524); from which it will be seen that the cause was tried upon the issues presented by the cross-complaint of the water company. The court held that the water company could not recover except for the reasonable value of the use of its plant during the time it had been used and held by the city. The demand of the water company is for a money judgment, the amount of which is the only question to be determined. This amount will depend upon whether the claims of the water company accrued at a time when there were unappropriated revenues to meet them, and the answer to the question, When did the claims of the water company equal the amount of unappropriated revenues for the respective fiscal years during which the city had the use of the water company's plant? In the opinion filed by the court, on rehearing, the principle that no indebtedness or liability incurred in any one year shall be paid out of the ordinary income and revenue of any future year, as held in *McBean v. Fresno*, 112 Cal. 159, 53 Am. St. Rep. 191, and other cases, was reaffirmed; but it was suggested that "future provision might be made for the payment of a debt, although there might be no revenues of the fiscal year in which the debt was incurred out of which it could be satisfied—as, for instance, by the adoption by the people of a proposal to pay it, or by other methods that might possibly be suggested." The opinion first rendered was also modified in this, that it was held that the court could not order judgment upon the findings for the reasonable value to the city of the water company's plant and of the water supplied, "because it does not appear that the claims of the water company all accrued at a time when there were unappropriated revenues for the respective fiscal years during which the city had the use of the water company's plant."

The plaintiffs having dismissed their action, and this court having decided that the portion only of the cross-complaint of

the water company counting on *quantum valebat* presented any ground for relief, the cause came on for hearing before the Honorable J. W. Hughes and E. S. Torrance, judges of the superior court, sitting in Bank, upon the motion of the water company for an order that the judges of this court secure the services of some other judge of another county to preside at the trial of said cause, or that the judges of this court change the place of trial of the said action to some other county. The motion was heard upon the affidavit of J. M. Howells, president of the defendant water company, in its support, and upon the counteraffidavit of H. E. Doolittle, Esq., one of the attorneys for the city, and upon the oral examination of affiant Howells, called as a witness by the city. The court made an order denying the motion, from which the water company appeals. The grounds of the motion were: 1. The judges were disqualified by reason of pecuniary interest in the result of the action; and 2. That they were disqualified by reason of bias and prejudice entertained toward appellant.

1. Upon the question of interest the undisputed statement in Howells' affidavit is, that there are but two judges of the superior court in San Diego county, and that they "are, and each of them is, and was at the times mentioned in the pleadings in this action, resident property owners and taxpayers in said city of San Diego, and their and each of their property in said city will be liable to taxation for any amount that may be found due the water company, if it shall be held that a tax shall be levied therefor," and said judges are, therefore, disqualified to try the action.

The inquiry to be made is, whether there were unappropriated revenues to meet the water company's claim, and to ascertain "as the basis of its judgment against the city just when the claims of the water company . . . . equaled the amount of unappropriated revenues for the respective fiscal years during which the city had the use of the water company's plant."

The question as to the liability of the city has already been determined on the first appeal contingent upon the fact that when the claim accrued there were funds in the treasury applicable to its payment. The water company will be entitled to a general judgment, and it was so ordered by this court, should

the facts show the legal basis, whether or not the funds are still available to pay it. The amount of the judgment—that is, the reasonable value of the use of the water company's plant—must be determined by the trial court and the further fact as to the basis of the liability. In such state of the case, is the judge disqualified because he is a taxpayer?

The rule was thus stated in *Meyer v. San Diego*, 121 Cal. 102, 66 Am. St. Rep. 22: "Where, in any litigation, there is any certain, definable, pecuniary or proprietary interest or relation which will be directly affected by the judgment that may be rendered, in every such case, without exception, so far as an exhaustive examination of the authorities goes, the disqualification of the judge is held to exist."

In *Oakland v. Oakland Water Front Co.*, 118 Cal. 249, the court said: "In our opinion, the word 'interested,' as used in the section of the code relied on (Code Civ. Proc., sec. 170), embraces only an interest that is direct, proximate, substantial and certain. . . . . We cannot conceive that the legislature meant to declare that the mere contingent possibility that some future supposable financial condition of a municipality might, in a slight degree, affect a judge as a taxpayer would strip him of all his personal judicial qualities."

In *North Bloomfield etc. Co. v. Keyser*, 58 Cal. 315, it was said that the code provision "should not receive a technical or strict construction, but rather one that is broad and liberal"; and the meaning of the court was shown by its adoption of what was said in *Stockwell v. Township Bd. of White Lake*, 22 Mich. 350, namely: "The court ought not to be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application."

In further statement of the rule the court said in the Keyser case: "Undoubtedly, the prohibition does not extend to cases where the interest is simply in some question or questions of law involved in the controversy, or when it is indirect and remote." These expressions fairly state the rule and the spirit in which it must be applied.

Appellant relies on *Meyer v. San Diego, supra*, as decisive of the question. In that case the plaintiff sought to set aside as

void a contract between the city and the water company, de-
fendant, involving an expenditure of one million five hundred
thousand dollars of the city's moneys, to be obtained by the
sale of bonds, which had been voted at a special election, and
to enjoin their issuance.   The law under which the bonds were
to be issued enjoined on the municipality the duty of levying
and collecting a special annual tax sufficient to pay interest
and provide a sinking fund for the ultimate redemption of the
bonds.   The court said: "The disqualification does not spring
from the fact that the judge is a citizen, inhabitant, and tax-
payer of the city of San Diego, nor yet from the fact that the
municipality is a party litigant in the action.   It arises from
the circumstance that he owns property within the city which
may or may not be liable for the burden of a special tax for the
period of forty years, as he shall decide. . . . . The judgment
which he renders in the case will be binding upon his rights
and his property.   His interest is in the outcome of the litiga-
tion, and it is a direct, measurable, pecuniary interest."   The
Oakland Water Front case, *supra*, was distinguished from the
Meyer case by the broad fact that in the Oakland case, even if
the city had succeeded, it was doubtful whether the control
of the lands involved would result in profit or loss to its finances,
and it was still more doubtful whether the management of the
lands would affect the tax rate of the city in any degree; and it
was held that, under such circumstances, the interest was re-
mote, contingent, and speculative, and did not work the dis-
qualification of the judge.   We are to apply the foregoing prin-
ciples as illustrated by the cases cited to the facts in the pres-
ent case.   That the water company has a claim for some amount
seems to be reasonably certain, contingent only upon there hav-
ing been funds in the treasury from which it could have been
paid from time to time as it accrued.   This is not a contingency
which applies to the interest of the judge, but is rather one of
the facts upon which the liability depends.   With this contin-
gency supplied by the facts the water company will be entitled
to a judgment whether or not the funds once applicable have
since been used properly or improperly for other purposes; or,
if not used at the time, have been carried over to other years
and have been used or are now beyond the reach of the judg-

ment. If the funds for the fiscal years which might have been applied to the payment of the claim are still on hand, they must be applied to the payment of the judgment, and to that extent it is urged that the treasury will be depleted and must be replenished by taxation on the property of the city, including that of the judges. It is also contended that, if there is no money applicable to the payment of the judgment which may be rendered, there will rest a liability upon the city, nevertheless, which may become the foundation for the imposition of a special tax to meet it, or by some other means payment may be enforced as was suggested in the former appeal of this case; and in any view of the probable outcome of this litigation there will result a liability of the city which, if ever met, must be met by either taxing the property of the inhabitants or by appropriating funds already raised from taxation.

Conceding all this to be true, still it seems to us that the interest of the judge is too remotely involved to come within the rule. If there are funds now available to meet the judgment, it does not follow by any means that a tax levy would be necessary or would ever be levied to replenish the fund so appropriated. It has often been held that judges as taxpayers are not disqualified to try damage suits against a municipality, where the judgment is to be paid out of the treasury of such municipality.

If in this case it should turn out that there are no available funds with which to pay the judgment, the question remains, How or when will it ever be paid? To say that the people may vote a special tax for that purpose is to look far into the future and to a very remote and uncertain contingency; and, besides, it would then be the act of the people and not of the judge. It is true that his judgment would be the foundation for such possibility, but we cannot believe that the rule goes so far as to preclude a judge from hearing a cause where the enforcement of his judgment is so remote, uncertain, and problematical, and if ever enforced must be through some agency independent of the court. Besides, the judgment does not necessarily involve a tax levy at all. It goes no further than to determine that an indebtedness exists, but the contingency remains that it may never be paid.

The decision in the Meyer case was supported in part by *Austin v. Nalle,* 85 Tex. 520, which was in most respects similar to the case here. But that case has since been distinguished in *Dallas v. Peacock,* 89 Tex. 58, and in *Thornburg v. Tyler,* 16 Tex. Civ. App. 439. The ground of the distinction, as stated in the latter of these cases, was that "the Nalle case directly involved the levy of a tax and the legality of bonds supported by a tax levy already levied, and was to prevent the issuance of bonds for the payment of which it would be necessary to levy a tax before they could have been issued," and the court said: "In that case, tax levies were directly involved, while in this case the suit is a simple suit for the recovery of a money judgment upon the obligation of the city." The court repeated what was said in Peacock's case, *supra:* "That there is no disposition to extend the disqualification of a judge beyond the rule announced in *Austin v. Nalle, supra."* The Thornburg case was an action to recover of the city of Tyler upon two hundred and fifty bonds, of the value of one hundred dollars each, issued in aid of a railroad. Plaintiff objected to a trial before Judge Mc-Cord, who was a taxpayer in the city of Tyler, and he was held qualified. The Peacock case was an action against the city for personal injuries caused by a broken and defective sewer, negligently left open by defendant. In that case the judges raised the question of their qualification on their own motion, two of whom owned residences in the city of Dallas, and all three of them were taxpayers therein. It was held that a judge as a taxpayer has no interest in a suit against a city which does not involve a tax. The court said: "There exists a possibility that where a judgment is given against a city it may result in an increased levy of taxes, and so the recovery of a judgment by a city may, in some cases, bring about a reduction of taxation. In the case of *State v. Intoxicating Liquors,* 54 Me. 564, it is said: 'The interest of the judges is not only extremely minute, but is contingent and dependent entirely upon the decision of another tribunal.' So, in the present case, a judgment against the city cannot in any way affect primarily any one of the judges of the court of civil appeals, except upon two contingencies: 1. That the city council have not already levied taxes beyond the limit of their power; and 2. That they may order an increased

levy in order to pay the judgment. This seems to us a remote contingency."

In the Meyer case, *supra,* the validity of the bonds was involved; by that judgment the judge was to place upon his property, or to refuse to do so, a certain, direct, definable, pecuniary burden, capable of mathematical ascertainment, and it was for this reason the judge was held to be disqualified. But such is not the case here, and we do not think the rule should be extended beyond the boundaries defined in the Meyer case. The action here is on an implied contract for the reasonable value of the use of the water company's plant and may be tried by a jury. We can see no difference between this case and ordinary cases involving liabilities upon contract generally where judgments may be entered against cities, counties, or the state. To hold that no tax-paying judge could sit in such cases would render the administration of justice in the courts nearly impossible.

2. The matters relating to the alleged bias and prejudice of the judges are mostly stated on information and belief. The facts claimed to have been stated positively on which appellant relies are: 1. That both judges are property holders and taxpayers in the city; 2. That there has been long and continued controversy between the city and water company which has engendered much feeling between the water company and its consumers, including said judges; 3. That there was a personal controversy between the company and Judge Hughes, both parties resorting to the newspapers to air their grievances, and the company shut off the water from the judge's premises, whereupon he threatened to resort to proceedings to forfeit the company's charter, and that his threats found their way into the newspapers; 4. That shortly before this application was made a similar one was made upon an affidavit held insufficient, and that the judges became offended and censured the attorney of the company for presenting the same, and said that unless the affidavit was made through inadvertence, its presentation would be a contempt of court; and 5. That in certain other litigation an application had been made for a change of venue from Judge Torrance's court, which he refused; that on the appeal the attorneys of the company filed a brief in which it was claimed

that said judge was disqualified, and that the circumstances were such that the said judge should, on his own motion, have called in another judge without an affidavit having been filed.

As to specification 1 it is sufficient to say that interest is made a special ground of disqualification, and we do not think it should be considered in support of the ground of bias, which is made a distinct and separate ground. The facts under specification 2 do not, we think, show such ill-feeling on the part of the judges toward the company as to indicate prejudice sufficient to warrant us in saying that they are disqualified to try the case. The personal controversy referred to in specification 3 would not disqualify Judge Torrance even if it could be said to have that effect as to Judge Hughes. But it appeared that the controversy arose before the latter became superior judge, and was not of such nature as would justify us in holding that he carried this old grudge, if he had any, with him on the bench; and, besides, it appeared that the basis of these charges was largely hearsay and were stated on information and belief. We can see nothing to justify appellant's conclusion that disqualifying bias exists in the minds of these judges from the episode as to the insufficient affidavit. The judges might, without just provocation, have thought the attorneys guilty of contempt and might have said so, but we cannot say that for this reason they would be disposed to bear down upon the attorneys' client or unduly favor the city. Nor can we so far impeach the sense of fairness and justice which it is presumed rests in the conscience of every judge as to say that, because the attorney has incorporated distasteful and even scandalous matter in a brief reflecting upon the judge, therefore the judge would punish the offense by mulcting the innocent client. If we must presume bias and prejudice toward the client because of ill-feeling toward the attorney, it would establish a dangerous rule by which the attorney, through his own fault, could have his case transferred to another judge by quarreling with the court. We prefer to believe that a judge may, with or without cause, cordially dislike and even distrust an attorney, and yet be capable of doing exact justice toward his client.

The matters conceded to have been stated on information and belief fail to convince us that there exists in the minds of either

one of these judges such animosity toward the company as would disqualify him from meting out even-handed justice in the case. Appellant complains that the affiant, Howells, was put upon the witness stand and was made to undergo a rigid examination by the judges as to the hearsay statements in the affidavit affecting their feeling toward the water company; and it is claimed that this examination was unauthorized and his evidence should be disregarded. Counsel made no objection at the time, but submitted their motion on the evidence as it went in. We do not think he can now be heard to object.

Upon information and belief it is stated that Judge Torrance became offended because of the brief filed in the supreme court by the attorneys in this case in another action, and complained to that court of the same; that a certain newspaper owned by opponents of the water company was the especial champion of Judge Torrance, and defended him and "attacked the company and its attorneys in a violent and virulent way; that there was a strong feeling of friendship between said judge and the opponents of the company, and that said judge entertained feelings of personal animosity toward the company, its managers and officers." We do not think the evidence warrants the conclusion (for it is but a conclusion, and cannot be received as a fact because so stated by affiant) "that the judge entertained feelings of personal animosity toward the company, its officers and managers." The facts as drawn out fail to justify the conclusion.

It should be added that affidavits based upon information and belief, especially where the sources of the information are readily obtainable, as was the case here, but were not brought forward, have but weak probative force as ground for change of place of trial. The court has in many cases so held, and in some of them it has been held that a statement upon information and belief, standing alone, is not sufficient to authorize the change to be ordered. (*People v. McCauley,* 1 Cal. 379; *People v. Williams,* 24 Cal. 31; *People v. Shuler,* 28 Cal. 490.)

We have given the proofs submitted careful scrutiny, for the reason that appellant's counsel are at some disadvantage because of the strained personal relations between them and the judge before whom the case is pending. But we cannot bring our-

selves to believe from the evidence that this judge is legally disqualified to go forward with the hearing.

The order should be affirmed.

Britt, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.                    Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 29th of November, 1899:

BEATTY, C. J.—I dissent from the order denying a rehearing of this case because I think the decision of Department One herein is in conflict with the decision of Department Two in *People v. Compton,* 123 Cal. 403.   The result will be confusion in a matter which ought to be made plain, if possible, by a decision of the court in Bank.